1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,    )   1:03-cv-6198-OWW-SMS
                                  )
12                  Plaintiff,    )   **FINDINGS AND RECOMMENDATION RE:**
                                  )   **PLAINTIFF'S MOTION FOR DEFAULT**
13   vs.                          )   **JUDGMENT** (Doc. 73)
                                  )
14   $14,448.00 Currency, et al., )
                                  )
15                  Defendants.   )
     _____)
16

17        Plaintiff is proceeding with a civil action in this Court.

18   Plaintiff's motion for default judgment is before the Court and

19   is proceeding before a Magistrate Judge pursuant to 28 U.S.C.

20   § 636(b) and Local Rule 72-302(c)(19).

21        I. <u>Background</u>

22        In the complaint filed on September 4, 2003, and the first

23   amended complaint filed on January 11, 2007, it is alleged that

24   this Court has jurisdiction over this action to forfeit currency

25   and vehicles pursuant to 21 U.S.C. § 881(a)(4), which authorizes

26   forfeiture of vehicles used or intended to be used to transport

27   controlled substances or to facilitate the transportation, sale,

28   receipt, possession, or concealment of controlled substances, and

                                  1

§ 881(a)(6), which authorizes forfeiture of money or things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, or all proceeds traceable to such an exchange, or money used or intended to be used to facilitate any violation concerning controlled substances. (Cmplt./FAC p. 2.) The complaint and first amended complaint also cite 18 U.S.C. § 981(a)(1), which categorizes as subject to forfeiture any property involved in a transaction or attempted transaction in violation of § 1956 or § 1957, or any property traceable to such property. (Id.)

It is alleged that the Defendant properties, consisting of currency and vehicles, were involved in or used to facilitate, or were the proceeds of or are traceable to the proceeds of, violations of 21 U.S.C. §§ 841(a)(1) [knowing and intentional possession, manufacture, or distribution of a controlled substance] and 846 [attempt or conspiracy to commit a controlled substances offense], and 18 U.S.C. §§ 1956 [knowingly laundering the proceeds of unlawful activity] and 1957 [knowingly engaging in monetary transactions with the proceeds of criminal offenses].

It is alleged that all the properties were seized within the Eastern District of California. The complaint and first amended complaint detail a large-scale family-type methamphetamine manufacture and distribution scheme, referred to as the Felix Drug Organization, involving the persons from whom the Defendant properties were seized. (Cmplt. pp. 3-6.; FAC pp. 3-5) They allege specific overt acts of methamphetamine and cocaine sales from the members of the organization and associated persons in large quantities (often a pound or more) from 1998-2002. (Id. pp.

1  6-10; pp. 5-8.) They also detail financial records seized from
2  various locations tending to show that Jose Felix, his father,
3  Prajedes Felix, and his mother, Fidelia Felix, engaged in
4  financial transactions without a checking account, instead using
5  money orders and cash and cashier's checks and making large
6  expenditures, many over a thousand dollars, that exceeded the
7  legitimate income reported for tax purposes for the pertinent
8  periods (1999-2002), and did not include regular living expenses.
9  (Cmplt. pp. 12-20; FAC pp. 10-15.)

10     Plaintiff filed an ex parte application for default judgment and
11  memorandum of points and authorities on October 27, 2006 (Doc. 73).

12     Plaintiff's motion came on regularly for hearing on December
13  8, 2006, at 9:30 a.m. in Courtroom No. 7 before the Honorable
14  Sandra M. Snyder, United States Magistrate Judge. Assistant
15  United States Attorney Kristi C. Kapetan appeared on behalf of
16  Plaintiff. There was no appearance on behalf of any defendant or
17  claimant. After the hearing, Plaintiff filed additional
18  stipulations and plea agreements on December 20, 2006 (Docs. 77-
19  86), and filed a supplemental brief on January 5, 2007 (Doc. 87).
20  Plaintiff also filed an amended complaint on January 11, 2007
21  (Doc. 88). The matter now stands submitted to the Court.

22     II. <u>Default Judgment</u>

23     A court has the discretion to enter a default judgment
24  against one who is not an infant, incompetent, or member of the
25  armed services where the claim is for an amount that is not
26  certain on the face of the claim and where (1) the defendant has
27  been served with the claim; (2) the defendant's default has been
28  entered for failure to appear; (3) if the defendant has appeared

1  in the action, the defendant has been served with written notice

2  of the application for judgment at least three days before the

3  hearing on the application; and, (4) the court has undertaken any

4  necessary and proper investigation or hearing in order to enter

5  judgment or carry it into effect. Fed. R. Civ. P. 55(b); Alan

6  Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th

7  Cir. 1988). Factors that may be considered by courts in

8  exercising discretion as to the entry of a default judgment and

9  as to setting aside a default include the nature and extent of

10  the delay, Draper v. Coombs, 792 F.2d 915, 924-925 (9th Cir.

11  1986); the possibility of prejudice to the plaintiff, Eitel v.

12  McCool, 782 F.2d 1470, 1471-72 (9th Cir.1986); the merits of

13  plaintiff's substantive claim, id.; the sufficiency of the

14  allegations in the complaint to support judgment, Alan Neuman

15  Productions, Inc., 862 F.2d at 1392; the amount in controversy,

16  Eitel v. McCool, 782 F.2d at 1471-1472; the possibility of a

17  dispute concerning material facts, id.; whether the default was

18  due to excusable neglect, id.; and, the strong policy underlying

19  the Federal Rules of Civil Procedure that favors decisions on the

20  merits, id.

21      With respect to default judgments in proceedings that are in

22  rem actions for forfeiture, both the general Federal Rules of

23  Civil Procedure and the Supplemental Rules for Certain Admiralty

24  and Maritime Claims (Supp. R.) apply, but the latter rules

25  prevail if there is an inconsistency. Supp. R. A(1). Supp. R.

26  G(1) provides that the rule governs a forfeiture action in rem

27  arising from a federal statute; to the extent that Rule G does

28  not address an issue, Supp. Rules C and E also apply.

A. Notice

The provisions of Rule G(4) with respect to notice are as follows:

(4) Notice.

(a) Notice by Publication.

(i) When Publication Is Required. A judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders. But notice need not be published if:
    (A) the defendant property is worth less than $1,000 and direct notice is sent under Rule G(4)(b) to every person the government can reasonably identify as a potential claimant; or
    (B) the court finds that the cost of publication exceeds the property's value and that other means of notice would satisfy due process.

(ii) Content of the Notice. Unless the court orders otherwise, the notice must:
    (A) describe the property with reasonable particularity;
    (B) state the times under Rule G(5) to file a claim and to answer; and
    (C) name the government attorney to be served with the claim and answer.

(iii) Frequency of Publication. Published notice must appear:
    (A) once a week for three consecutive weeks; or
    (B) only once if, before the action was filed, notice of nonjudicial forfeiture of the same property was published on an official internet government forfeiture site for at least 30 consecutive days, or in a newspaper of general circulation for three consecutive weeks in a district where publication is authorized under Rule G(4)(a)(iv).

(iv) Means of Publication. The government should select from the following options a means of publication reasonably calculated to notify potential claimants of the action:
    (A) if the property is in the United States, publication in a newspaper generally circulated in the district where the action is filed, where the property was seized, or where property that was not seized is located;
    (B) if the property is outside the United States, publication in a newspaper generally circulated in a district where the action is filed, in a newspaper generally circulated in the country where the property is located, or in legal notices published and generally

circulated in the country where the property is located;
or
        (C) instead of (A) or (B), posting a notice on an
official internet government forfeiture site for at
least 30 consecutive days.

    (b) Notice to Known Potential Claimants.

    (i) Direct Notice Required. The government must send
    notice of the action and a copy of the complaint to any
person who reasonably appears to be a potential claimant
    on the facts known to the government before the end of
    the time for filing a claim under Rule G(5)(a)(ii)(B).

    (ii) Content of the Notice. The notice must state:
        (A) the date when the notice is sent;
        (B) a deadline for filing a claim, at least 35
    days after the notice is sent;
        (C) that an answer or a motion under Rule 12
    must be filed no later than 20 days after filing
    the claim; and
        (D) the name of the government attorney to be
    served with the claim and answer.

    (iii) Sending Notice.
        (A) The notice must be sent by means reasonably
    calculated to reach the potential claimant.
        (B) Notice may be sent to the potential claimant
    or to the attorney representing the potential claimant
    with respect to the seizure of the property or
    in a related investigation, administrative forfeiture
    proceeding, or criminal case.
        (C) Notice sent to a potential claimant who is
    incarcerated must be sent to the place of incarceration.
        (D) Notice to a person arrested in connection with
    an offense giving rise to the forfeiture who is not
    incarcerated when notice is sent may be sent to
    the address that person last gave to the agency
    that arrested or released the person.
        (E) Notice to a person from whom the property
    was seized who is not incarcerated when notice is sent
    may be sent to the last address that person gave to
    the agency that seized the property.

    (iv) When Notice Is Sent. Notice by the following means
    is sent on the date when it is placed in the mail,
    delivered to a commercial carrier, or sent by
    electronic mail.
    (v) Actual Notice. A potential claimant who had
    actual notice of a forfeiture action may not oppose
    or seek relief from forfeiture because of the government's
    failure to send the required notice.

Supp. R. G(4).

1    Plaintiff mentioned Supplemental Rule G, which took effect

2 in December 2006, for the first time in the supplemental brief

3 filed on January 5, 2007 (Doc. 87). Plaintiff points to the order

4 of April 12, 2006, in which the Supreme Court of the United

5 States adopted the amendment to the Supplemental Rules and stated

6 in pertinent part:

7        3. That the foregoing amendments to the Federal Rules
         of Civil Procedure and the Supplemental Rules for
8        Admiralty or Maritime Claims and Asset Forfeiture
         Actions shall take effect on December 1, 2006, and
9        shall govern in all proceedings thereafter commenced
         and, insofar as just and practicable, all proceedings
10       then pending.

11 (See, www.uscourts.gov/rules/Letters-Orders.pdf, Transmittal

12 Letters to Congress and Supreme Court Orders, Order of April 12,

13 2006.)

14    Thus, it appears that the Court intended that the new rules

15 apply to presently pending cases if just and practicable.

16 Although it is generally presumed that a change in a substantive

17 statute will not apply retroactively, a procedural rule changed

18 after the commencement of a suit may generally be applied to the

19 suit without raising concerns about retroactivity because of

20 diminished reliance interests in matters of procedure and because

21 rules of procedure generally regulate secondary rather than

22 primary conduct. The application of a new rule of procedure

23 ordinarily depends upon the posture of the particular case.

24 Landgraf v. USI Film Products, 511 U.S. 244, 275 (1994).

25    Here, although the government's giving of notice preceded

26 the effective date of Supplemental Rule G, it does not appear

27 that applying those rules, which the comment reveals incorporate

28 a commonsense approach to notice grounded in defined and

7

1 recognized principles of due process of law, would affect any
2 substantive right or obligation relating to the merits of the
3 case. Supp. Rule G, Adv. Comm. Note on 2006 Adoption. The
4 Advisory Committee Note indicates that the rule was added to
5 bring together the central procedures governing civil forfeiture
6 actions; it also states that the rule generally applies to
7 actions governed by the Civil Asset Forfeiture Reform Act of 2000
8 (CAFRA) as well as those excluded from it; thus, the intended
9 scope of application is very broad. The rule permits flexibility
10 as to the time of service of any warrant and supplemental
11 process. Id. The provisions for notice incorporate the
12 traditional means of publication and adopt the general principle
13 that notice should be effectuated by means reasonably calculated
14 to reach potential claimants at a cost reasonable in the
15 circumstances, and actual notice precludes a challenge to the
16 government's failure to comply with the specific requirements of
17 the rule set forth in Rule G (4)(b). Id.

18     Accordingly, the Court will apply Supplemental Rule G unless
19 injustice or impracticality would result.

20     The provisions of Supp. R. G(4) have been set forth. Rule C
21 previously required publication, as does Local Rule A-530.

22     Local Rule A-540(a) requires that a party seeking a default
23 judgment in an action in rem shall show to the satisfaction of
24 the Court that due notice of the action and arrest of the
25 property has been given by publication pursuant to Local Rule
26 A-530, and by personal service on the person having custody of
27 the property or on the person having custody prior to its
28 possession by a law enforcement agency or officer, and by

personal service or by certified mail, return receipt requested, to every other person who has not appeared in the action and is known to have an interest in the property; provided that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to give such notice without success.

The Due Process Clause of the Fifth Amendment, which confers a right to notice and an opportunity to be heard, requires that with respect to known owners of the property whose whereabouts are known, the government must employ such notice as is reasonably calculated under all of the circumstances to apprise the person of the pendency of the forfeiture. United States v. Real Property, 135 F.3d 1312, 1315 (9th Cir. 1998); Dusenbery v. United States, 534 U.S. 161, 168 (2002) (holding that sending certified mail to the custodial institution where the party was being held as well as to the residence where the arrest occurred, and the address in the town where his mother lived, satisfied due process even though it did not result in actual notice to the person).

Here, returns of service reveal that the Defendant currencies were arrested on or about February 26, 2004. (Docs. 10-16.) Returns reveal that the vehicles were arrested on or about March 8, 2004. (Docs. 19-22.)

The publication (a single instance of publishing the notice) ordered by the Court on March 9, 2004 (Doc. 18), was effected in compliance with Supp. Rule C(4) and Local Rules A-530 and 83-171, and proof thereof was filed by Plaintiff on April 19, 2004 (Doc. 27). On October 10, 2006 (Doc. 72), Plaintiff filed an additional

proof of service by publication, which had not been ordered by
the Court, indicating that notice of the arrest and action and
other required information was published on four dates,
commencing August 28, 2006, and ending September 18, 2006. The
Court notes that this publication was effected <u>after</u> the entry of
defaults against the potential claimants involved in this action.

### 1. $14,448.00

#### a. Bryan Barrera

According to the complaint and first amended complaint,
Bryan Barrera had custody of this property before it was
possessed by law enforcement; he had been in the company of Jose
Felix and Eladio Felix.

Personal service of the complaint, publication documents,
warrant of arrest, and court notices on Barrera was attempted on
July 2, 2004, at 16311 Citrus in La Puente and at 4040 Rosemead
Boulevard No. 48, Pico Rivera; on July 7, 2004, personal service
was again attempted at the Rosemead address. Sending copies via
certified mail on July 19, 2004, to the Rosemead address resulted
in return of documents unclaimed on or about August 5, 2004. On
February 15, 2005, the documents were sent by certified mail to
the Citrus address in La Puente; a return receipt was signed by
Bryan Barrera on or about February 22, 2005. (Teglia Dec., Doc. 68).

Although there is no evidence that there was personal
service upon Barrera, a person with custody of the property prior
to its possession by law enforcement, as required by Local Rule
A-540(a), the Court notes that Barrerra received actual notice by
certified mail. This notice was clearly sent by means reasonably
calculated to reach the potential claimant. <u>See</u>, <u>United States v.</u>

10

1  <u>Real Property...Lido Motel</u>, 135 F.3d 1312, 1315-16 (service on an
2  incarcerated party by certified mail at the institution of
3  incarceration held sufficient); <u>Gonzalez-Gonzalez v. United</u>
4  <u>States</u>, 257 F.3d 31, 38 (1st Cir. 2001) (actual knowledge of the
5  forfeiture proceedings might excuse what would otherwise
6  constitute a due process violation); <u>Nunley v. Department of</u>
7  <u>Justice</u>, 425 F.3d 1132, 1139 (8th Cir. 2005) (one who had timely
8  actual knowledge of an administrative forfeiture could not
9  complain about the constitutionality of the method used to
10 provide notice ); <u>Mullane v. Central Hanover Bank & Trust Co.</u>,
11 339 U.S. 306, 319-20 (1950) (noting that the mails are recognized
12 as an efficient and inexpensive means of communication that are
13 generally reasonably calculated to reach addressees). Further,
14 because Barrera failed to file a claim or response, he lacks the
15 standing or authority to challenge the forfeiture. <u>United States</u>
16 <u>v. Real Property...Lido Motel</u>, 135 F.3d at 1316-17; Supp. R.
17 G(4)(b)(v).

18     Accordingly, the Court concludes that notice to Barrera was
19 sufficient.

20               b. <u>Alberto Felix</u>

21     Plaintiff states that potential claimant Alberto Felix
22 agreed to forfeit his right to the currency, citing to the
23 stipulation lodged on June 23, 2004. (Applic. p. 6.) Reference to
24 the stipulation for final judgment of forfeiture of $14,448.00
25 and $6,124.00 in U.S. Currency, lodged on June 23, 2004, reveals
26 that potential claimant Alberto Felix agreed to forfeit his
27 right, title, and interest in the currency to Plaintiff. Thus,
28 there is no defect in notice with respect to Alberto Felix.

### c. Jose Felix

On June 23, 2004, a stipulation for final judgment of forfeiture as to the Defendant $14,448.00 currency and other property was lodged wherein the potential claimant Jose Felix agreed to forfeit his interest in the currency. Thus, there is no defect in notice with respect to Jose Felix.

### 2. $6,124.00 in United States Currency

It is alleged in the complaint and first amended complaint that on March 27, 2003, when law enforcement officers questioned Bryan Barrera and Eladio Felix after having received an item from Jose Felix, it was discovered that Eladio Felix had $6,124.00 in cash in his possession. While conversing in a police vehicle, Eladio Felix and Barrera were taped trying to come up with a legitimate-sounding story to explain the large amounts of cash they possessed. (Cmplt. p. 10; FAC pp. 7-8.)

### a. Eladio Felix

Plaintiff argues that it has provided substitute service under Rule 4 on Eladio Felix by personally serving his spouse, Taryn Felix, at their residence, by certified mail, and by publication for four consecutive weeks. The required notice pursuant to Rule 4(e)(2) appears via the proof of service filed on July 23, 2004 (Doc. 45), reflecting service of the requisite documents on Eladio Felix's wife, apparently a person of suitable age and discretion residing at the usual place of abode. Default was entered as to Eladio Felix on September 17, 2004 (Doc. 55).

///

//

/

b. <u>Alberto and Jose Felix</u>

Again, the stipulations for final judgment of forfeiture as to this currency from these two potential claimants were lodged on June 23, 2004. Thus, there are no problems with notice.

3. <u>$18,565.00 in United States Currency</u>

It is alleged in the complaint and first amended complaint that a vehicle and $18,265.00 in United States currency were seized from Jose Felix's residence during the execution of a federal search warrant. (Cmplt. pp. 10-11; FAC p. 8.) On January 27, 1997, Jose Felix was arrested for possession of a small quantity of methamphetamine, and a car was seized for having a hidden compartment. (Cmplt. p. 8; FAC p. 6.) It is alleged that Jose Felix was the eldest son of Prajedes Felix, Sr., and was the head of the methamphetamine manufacture and distribution ring, producing hundreds of pounds of methamphetamine monthly. (Cmplt. p. 4; FAC p. 3.)

a. <u>Jose Felix</u>

In the stipulation lodged June 23, 2004, Jose Felix agreed to forfeit his rights in the Defendant currency.

b. <u>Gricelda Martinez</u>

The declaration of Tammy Teglia in support of request for entry of default, filed on March 15, 2005 (Doc. 61), reflects that Martinez was personally served with copies of the complaint and other required documents on January 6, 2005. Adequate notice was given.

///

//

/

13

1                              c. Serapia Zepeda

2          Plaintiff asserts, without reference to any evidence, that

3   along with Martinez, Zepeda, a person with a known interest in

4   the Defendant property, filed a claim in June 2003 with respect

5   to this currency during the FBI's administrative forfeiture

6   proceeding. (Applic. p. 8.) The declaration of Tammy Teglia in

7   support of the request for entry of default, filed on March 15,

8   2005 (Doc. 61), reflects that an effort of the marshal to effect

9   service in June 2004 at 196 E. Gibbons in Porterville was

10  unsuccessful; it was remarked that Zepeda had moved to Alaska.

11  The proof of service filed on September 9, 2004 (Doc. 49), by the

12  marshal, confirms this. Teglia further declared that the daughter

13  had told the marshal that Zepeda had moved to Alaska and was not

14  expected to return until November 2004. The marshal's proof of

15  service does not reflect this, but Teglia, the paralegal

16  specialist assigned to this forfeiture action, states that she

17  had personal knowledge of the matters that she stated.

18         The other effort made to serve Zepeda with the relevant

19  documents was by certified mail in December 2004 at the Gibbons

20  address again; Gustavo Felix signed the return receipt card on

21  December 28, 2004. It is unclear whether this in itself would

22  constitute actual notice to Zepeda, such as is contemplated by

23  Local Rule A-540(a), but it arguably constitutes sending notice

24  to her via certified mail, return receipt requested. Further, the

25  second attempt to serve her at an address to which it may be

26  inferred that Zepeda's daughter indicated that Zepeda would

27  return in the month during which the certified mail was sent,

28  coupled with someone's signing the receipt apparently on behalf

                                    14

of Zepeda, a resident, appears to constitute sending notice by means reasonably calculated to reach the potential claimant within the meaning of Supp. R. G(b)(iii)(A). Finally, it warrants an inference of actual notice ultimately being received.

Accordingly, it appears that adequate notice was given to Serapia.

### 4. $9,206.00 in United States Currency

It is alleged that when a federal search warrant was executed, this sum was seized from Prajedes Felix, Sr. Plaintiff asserts without reference to evidence that Prajedes Felix Sr., filed a claim in the administrative forfeiture proceeding. He answered the complaint in the instant action and filed a claim to the Defendant currency. Thereafter, on July 14, 2004, he entered into a stipulation forfeiting his right, title, and interest in the currency and a Ford vehicle and agreeing to a final judgment of forfeiture of the currency and Ford to the United States. (Doc. 44.)

Accordingly, with respect to notice, a final judgment of forfeiture of this currency is appropriate with respect to Prajedes Felix.

### 5. $5,088.00 in United States Currency

It is alleged in the complaint and first amended complaint that during the execution of a federal search warrant at the residence of Pedro Lopez, this sum was seized from Pedro Herrera Lopez at the residence. Also located in the residence were several bags of methamphetamine in the freezer, totaling close to two pounds; a large bucket of methamphetamine residue as well as residue on the porch; and, a plastic bag containing Pro-MSM, a

common cutting agent. Pedro Herrera Lopez was arrested and charged with state drug charges. After service of the complaint upon the attorney of Pedro Lopez, Sr., and Estelle Lopez, the Lopezes filed a claim and an answer (Docs. 2, 4). On May 18, 2005, they executed a stipulation (Doc. 71) which was signed and filed on May 20, 2005, and which acknowledged that Pedro Herrera Lopez was the sole owner of defendant $5,088.00, and Estelle Lopez the sole owner of defendant $5,637.00; they further forfeited their right, title, and interest in defendants $5,088.00 and $5,637.00 to the United States with the exception of $1,000.00 from each defendant and interest thereon that were to be returned to each claimant upon the filing of the stipulation.

Accordingly, a final judgment of forfeiture is appropriate with respect to this defendant and these claimants.

### 6. $5,637.00 in United States Currency

It is alleged in the complaint and first amended complaint that this sum was seized from Pedro Lopez during execution of a federal search warrant at his residence in Porterville. Other paraphernalia and almost two pounds of methamphetamine were found at the residence. Pedro Lopez was arrested on federal drug charges. An additional $5,088.00 was seized from Pedro Herrera Lopez at the same residence. (Cmplt. p. 12; FAC p. 11.)

As previously noted, a stipulation for final judgment of forfeiture was entered that acknowledged that Estelle Lopez was the sole owner of this sum and that she forfeited all right, title, and interest in it upon the filing of the stipulation. //

1    Thus, adequate notice was given, and entry of a final

2  judgment of forfeiture with respect to this defendant is

3  appropriate.

4          7. $3,649.00 in United States Currency

5          It is alleged that this sum was seized during the arrest of

6  James Nelms, who was a close associate of the Felix Drug

7  Organization and an admitted drug dealer who was supplied by the

8  Felix Drug Organization in exchange for guns; law enforcement

9  discovered him hiding out in a motel in Porterville to avoid

10 arrest.

11    The declaration of Tammy Teglia filed on September 10, 2004

12 (Doc. 51), and attached proof of service establish that on July

13 29, 2004, James L. Nelms was personally served with the complaint

14 and other required documents.

15    Accordingly, adequate notice was given.

16          8. 2000 Cadillac Escalade

17          Plaintiff does not seek forfeiture of this vehicle because

18 pursuant to stipulation and order filed August 17, 2004 (Doc. 48),

19 this asset has been dismissed from the civil forfeiture action.

20    Accordingly, Plaintiff is not entitled to a judgment of

21 forfeiture with respect to this asset.

22          9. 2000 GMC Yukon Denali

23    It is alleged in the complaint and first amended complaint

24 that the GMC Yukon was seized by law enforcement during the

25 search of a storage unit rented by Pedro Lopez. The vehicle was

26 registered to Lyle Williams, Lopez's brother-in-law, but bore

27 license plates that had been changed from "NORMALW" to "BAD P."

28 The vehicle, purchased in January 2002, was paid in full by July

1  2002, with the final payment being made by a cashier's check of

2  $2,648.00. (Cmplt. p. 12; FAC pp. 10-11.) Pedro Lopez was

3  arrested on federal drug charges after being found with over

4  $5,000, a cutting agent, and about two pounds of methamphetamine

5  at his residence. (Cmplt. p. 12; FAC p. 11.)

6       On June 28, 2004, a stipulation for final judgment of

7  forfeiture was lodged in which potential claimant Pedro Lopez

8  agreed to forfeit his right, title, and interest in the defendant

9  vehicle.

10      As to potential claimant Williams, the registered owner, the

11 docket reflects a stipulation for final judgment of forfeiture

12 filed on February 22, 2005, in which Williams forfeited any of

13 his interest in the vehicle to the United States. (Doc. 60.)

14      Accordingly, appropriate notice was given to Lopez and

15 Williams with respect to the vehicle.

16                 10. 1997 Ford F-150 Truck

17      Plaintiff seeks a judgment based on a stipulation, filed on

18 July 14, 2004 (Doc. 44), for a final judgment of forfeiture in

19 which Prajedes Lopez Felix, Sr., agreed to forfeit his right,

20 title, and interest in a 1997 Ford F-150 as well as $9,206.00 in

21 currency.

22      This vehicle was not mentioned in the complaint except in

23 the caption (Cmplt. p. 1) and the list of defendants (id. p. 3).

24 Plaintiff conceded that the complaint is not legally sufficient

25 as to this defendant vehicle. (Tr. Dec. 8, 2006 p. 47.) The Court

26 granted Plaintiff's request to file an amended complaint that

27 would amplify the substantive allegations as to the named

28 defendant vehicle. (Id. at 47-48.) See, Peitzman v. City of

                              18

1  <u>Illmo</u>, 141 F.2d 956, 962 (8th Cir. 1944). On January 11, 2007,

2  Plaintiff filed an amended complaint in connection with

3  supplemental briefing (Doc. 88). Plaintiff did not afford the

4  Court the courtesy of informing the Court of the precise

5  amendments in the amended complaint's language.[1] Plaintiff states

6  simply that once the complaint is amended, Plaintiff believes

7  that the Court can enter default judgment against the vehicle

8  without further proceedings. (Supp. Br. pp. 7-8.)

9      The Court notes that new language in the proposed first

10  amended complaint states that the truck was seized from Prajedes

11  Felix, Sr., who purchased the truck in March 2003; the truck had

12  a value of about $9,000 at the time of seizure; and law

13  enforcement officials believe that Felix purchased the truck with

14  drug proceeds in light of Felix's income and known expenditures

15  as detailed later in the amended complaint. (FAC p. 9.)

16      The original complaint gave notice that the truck was sought

17  to be forfeited and that the truck was a defendant. Further, in

18  light of the fact that Prajedes Felix, Sr., signed the

19  stipulation, filed July 14, 2004 (Doc. 44), for a final judgment

20  of forfeiture in which he agreed to forfeit his right, title, and

21  interest in a 1997 Ford F-150, it appears that notice to Mr.

22  Felix was sufficient.

23  //

24  /

25

---

26      [1] The Court has thus had to expend the resources of its staff in reviewing the 23-page initial complaint, as
27  well as the proposed amended complaint, for the purpose of comparing the allegations. The font in the two
    documents is not the same, there was renumbering, and changes were made throughout the document; thus, detailed
28  review(s) of both documents was necessary to attempt to discern the changes. This loss of resources would have been
    unnecessary had Plaintiff's counsel proceeded properly to identify the changes made in the amended complaint.

11. <u>2002 Chevrolet Tahoe</u>

Documents from the Merle Stone Chevrolet-Cadillac revealed that a 2002 Chevrolet Tahoe, California license plate number GRICLDA, was purchased on August 30, 2002, by Jose Felix, who obtained a loan for part of the $42,764 purchase price, and who a credit application reflected was employed by J&J Car Wash as a manager for four years with an annual gross income of $35,000. (Cmplt. p. 10; FAC p. 8.) The vehicle was seized from Jose Felix's residence along with $18,565.00 in United States currency during the execution of a federal search warrant. (Cmplt. p. 10-11; FAC p. 8.)

Lienholder Tulare County Federal Credit Union filed an answer to the complaint as to the defendant vehicle; on September 16, 2004, a stipulation and order for interlocutory sale and full payment to the lienholder was signed by Jose Felix and filed (Doc. 54); it provided for the net proceeds to be deposited into a holding account as a substitute res. It therefore appears that there is not any problem with notice to Jose Felix.

Plaintiff states without offering any evidence thereof that Gricelda Martinez filed a claim to the Tahoe with the FBI during the administrative proceeding. The declaration of Tammy Teglia and associated proof of service filed on March 15, 2005 (Doc. 61), in support of request to enter default establishes that Martinez was personally served with the complaint and other required documents on January 6, 2005. Thus, there is no problem with notice as to potential claimant Gricelda Martinez.

//

/

1                    C. Sufficiency of the Complaint

2        Title 21 U.S.C. § 881(a)(4) and (6) provide for the

3   forfeiture of vehicles that are used or intended for use to

4   transport or facilitate the transportation, sale, possession, or

5   concealment of controlled substances; and, the forfeiture of

6   money or things of value furnished or intended to be furnished in

7   exchange for a controlled substance or listed chemical, or all

8   proceeds traceable to such an exchange, or money used or intended

9   to be used to facilitate any violation concerning controlled

10  substances.

11       Title 21 U.S.C. § 881(b) provides that any such property may

12  be seized by the Attorney General in the manner set forth in 18

13  U.S.C. § 981(b).

14       As previously detailed, the allegations of the complaint and

15  first amended complaint describe the organization of the Felix

16  Family Drug Organization and numerous overt acts of drug sales to

17  undercover officers in 1998-2002. Facts concerning the purchase

18  of the vehicles and the reported income of some of the members of

19  the family are fully set forth and reveal that there was no

20  legitimate source of income to cover the expenditures and explain

21  the presence of unusually large amounts of cash in possession of

22  the various members of the organization. It is expressly alleged

23  that the defendant properties, consisting of currency and

24  vehicles, were involved in or used to facilitate, or were the

25  proceeds of or are traceable to the proceeds of, violations of 21

26  U.S.C. § 841(a)(1) [knowing and intentional possession,

27  manufacture, or distribution of a controlled substance] and 846

28  [attempt or conspiracy to commit a controlled substances

offense], and 18 U.S.C. §§ 1956 [knowingly laundering the proceeds of unlawful activity] and 1957 [knowingly engaging in monetary transactions with the proceeds of criminal offenses]. (Cmplt. pp. 20-22; FAC pp. 15-17.)

Accordingly, with respect to the defendants currency and vehicles, the operative complaint reflects probable cause for the seizures, and it is legally sufficient to state claims for forfeiture of each of the defendants.

## D. Propriety of Default Judgment

The declarations submitted by Tammy Teglia establish that none of the persons with an interest in the defendant properties or potential claimants is an infant, incompetent, or member of the armed services.

In the supplemental briefing, Plaintiff provided the Court with a status report on the overall action. Plaintiff represents that there are no claims that remain outstanding; all claimants have been dealt within stipulations for final judgments of forfeiture and/or with stipulations and orders; further, plea agreements (Docs. 83-86) in the parallel criminal actions of Alberto Felix, Jose Felix, Pedro Lopez, and Prajedes Felix, Sr., provide that defendants will plead to at least one drug violation and agree to the forfeiture of various assets in this action.

Plaintiff states that Bryan Barrera, Eladio Felix, Serapia Zepeda, James Nelms, and Gricelda Martinez represent the remaining potential claimants who are the subject of this motion for default judgment. The Court notes that defaults were entered against Eladio Felix with respect to the $6,124.00 currency on September 17, 2004 (Doc. 55); against James Nelms as to $3,649.00

1  on September 17, 2004 (Doc. 56); against Gricelda Martinez (Doc.

2  63)and Serapia Zepeda (Doc. 64) on March 17, 2005; and, against

3  Bryan Barrera on April 11, 2005, as to $14,448.00 (Doc. 69).

4       No one other than the claimants who have previously entered

5  into a stipulation for judgment has claimed an interest in the

6  property or otherwise responded to the complaint despite adequate

7  notice. It does not appear that there is any risk of mistake or

8  excusable neglect on the part of anyone with a potential interest

9  in the property or of a dispute as to a material fact essential

10 to the government's case. No just cause for delay appears. It is

11 apparent from the declarations submitted to the Court that none

12 of the potential claimants is an infant, incompetent, or member

13 of the armed services. There does not appear to be any reason why

14 the general policy in favor of a decision on the merits would

15 warrant refusing to enter the requested default judgment.

16      Accordingly, the Court finds that Plaintiff has shown its

17 entitlement to a default judgment of forfeiture with respect to

18 all Defendants except the 2000 Cadillac Escalade that has been

19 dismissed from this action; further, with respect to Defendant

20 2002 Chevrolet Tahoe, the forfeiture should proceed with respect

21 to the substitute res of the net proceeds from the sale thereof.

22      III. <u>Form of the Judgment</u>

23      With respect to the form of the judgment, Plaintiff has

24 established that it is entitled to a judgment against the

25 property, <u>Waterloo Distilling Corp. v. U.S.</u>, 282 U.S. 577, 581

26 (1931), affecting the interests of all persons in the property,

27 <u>Hanson v. Denkla</u>, 357 U.S. 235, 246 n.12 (1958).

28 //

RECOMMENDATION

Accordingly, it is hereby RECOMMENDED that:

1. Plaintiff's motion for default judgment be GRANTED;

2. Plaintiff is entitled to, and the Clerk be directed to enter, a judgment that:

(a) The interest/s of Bryan Barrera, Eladio Felix, Serapia Zepeda, James Nelms, and Gricelda Martinez in all the Defendant properties, excluding the 2000 Cadillac Escalade, are CONDEMNED and FORFEITED to the United States of America;

(b) The right, title, and interest of all potential claimants in the Defendant properties, excluding the 2000 Cadillac Escalade, including but not limited to Jose Felix, Pedro Herrera Lopez, Estelle Lopez, Alberto Felix, Prajedes Felix, Sr., Lyle Williams, and Pedro Lopez, Jr., are FORFEITED to the United States of America pursuant to 21 U.S.C. § 881(a)(4), and are VESTED in the United States; and,

(c) All persons claiming any right, title, or interest in or to the Defendant property, excluding the 2000 Cadillac Escalade, have DEFAULTED and no longer have any right, title, or interest in the Defendant property whatsoever; and,

3. The Clerk of Court ENTER final judgment of forfeiture for Plaintiff United States of America.

These findings and recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **thirty (30) days** after being served with a copy, any party may file written objections

1   with the court and serve a copy on all parties. Such a document

2   should be captioned "Objections to Magistrate Judge's Findings

3   and Recommendation." Replies to the objections shall be served

4   and filed within ten (10) <u>court</u> days (plus three days if served

5   by mail) after service of the objections. The Court will then

6   review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

7   (b)(1)(C). The parties are advised that failure to file

8   objections within the specified time may waive the right to

9   appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d

10  1153 (9th Cir. 1991).

11  IT IS SO ORDERED.

12  **Dated:    August 22, 2007**              **/s/ Sandra M. Snyder**
                                   UNITED STATES MAGISTRATE JUDGE